IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DARLENE ROZIER-THOMPSON,<br><br>            Plaintiff,<br><br>  v.<br><br>BURLINGTON COAT FACTORY<br>WAREHOUSE OF POCONO CROSSING,<br>INC.,<br><br>            Defendant. | Civil Action Number 3:05CV456-JRS |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Burlington Coat Factory Warehouse of Pocono Crossing, Inc.'s ("BCF") Motion for Summary Judgment. For the reasons stated herein, BCF's Motion for Summary Judgment is GRANTED.

**I. BACKGROUND**

When considering a motion for summary judgment, a court must view the facts presented by the parties, as well as the inferences reasonably drawn from those facts, in the light most favorable to the non-moving party. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Proceeding under that standard, the Court views the relevant procedural and factual background as follows.

On July 1, 2005, after filing an EEOC Complaint almost exactly one year earlier, pro se Plaintiff Darlene Rozier-Thompson, a former BCF employee, filed a Complaint against BCF in this Court, alleging defamation and violations of Title VII, the Americans with Disabilities Act (the "ADA"), and the Virginia Human Rights Act. By an Agreed Order dated October 12, 2005, Plaintiff's defamation

and Virginia Human Rights Act claims were dismissed. BCF filed the instant Motion for Summary Judgment on March 8, 2006. As discerned from the Complaint and her deposition testimony, Plaintiff's remaining claims that are the subject of this Motion are the following: 1) a hostile work environment claim under Title VII; 2) a hostile work environment claim under the ADA; and 3) a discriminatory termination claim under the ADA.

**A.    Facts Relating to Allegations of a Hostile Work Environment and Discrimination**

Plaintiff began her employment with BCF when the store manager, Kathleen McDaniel, hired her as Sportswear Manager in October 2001. Shortly thereafter, Plaintiff claims, fellow employees started to make occasional comments to her based on her race and physical disabilities. To support her allegations of a hostile work environment and disability-based discrimination, Plaintiff's Complaint, deposition testimony, and discovery responses reveal two general categories of unlawful treatment Plaintiff claims to have endured.

With respect to the first category of comments, Plaintiff alleges three instances of racially motivated treatment in her deposition testimony, all stemming from her interactions with another BCF employee.[1] Plaintiff contends that in October 2001, when Lily White was her co-worker, Ms. White,

---

[1] The Court is not clear on the precise number of relevant incidents that Plaintiff alleges to have occurred. Beyond a brief introduction, Plaintiff's response to BCF's Motion for Summary Judgment is marked simply as "Affidavit" and contains an eight-page, single-spaced, chronological, unsworn account of Plaintiff's version of the events and actions at issue. Apart from the procedural and evidentiary deficiencies in Plaintiff's submission, she also contradicts her sworn deposition testimony by stating that a fourth similar incident occurred involving a BCF employee other than Ms. White. See Pl.'s Resp. Def.'s Mot. Summ. J. 5 (describing a September 2003 incident during which a BCF employee, Cindy Myerly, allegedly said to Plaintiff, "You people are so sensitive"). In the context of motions for summary judgment, the Fourth Circuit has often emphasized the need to disregard new factual assertions made in an affidavit submitted after the affiant has already provided his or her version of the facts through sworn deposition testimony. See, e.g., Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997). Therefore, for purposes of adjudicating Defendant's Motion for Summary Judgment, the Court will consider only the three statements that Plaintiff

who is Caucasian, approached Plaintiff and another African-American employee, who were discussing the topic of "lying." Ms. White then stated to Plaintiff, "You people are good at always lying." See Rozier-Thompson Dep.109, Feb. 27, 2006 (attached to Def.'s Mem. Supp. Mot. Summ. J. as ex. B). The second such incident occurred in November or December 2001. Although Plaintiff cannot recall exactly what was said, she contends that Ms. White approached her and some other African-American employees who had arrived late for work and used the term "you people" to refer to the group. See id. at 118–19. Finally, Plaintiff believes that the last incident occurred in March 2003, by which time Ms. White had been promoted to Assistant Manager. During that incident, Ms. White was speaking with Plaintiff and another African-American BCF employee. Plaintiff briefly stepped away, yet Ms. White kept talking to the other employee, presumably thinking that she was still talking to Plaintiff. When the other employee asked Ms. White whom she was talking to, Ms. White apparently realized her mistake, turned back to Plaintiff, and stated something to the effect of, "Oh, I thought I was talking to you. All you people look alike." Id. at 123. After Plaintiff discussed this last incident with the store manager, Ms. McDaniel, Ms. White apologized to Plaintiff for the comment.

With respect to the second category, Plaintiff alleges the occurrence of three incidents during which the store manager, a female, made statements to Plaintiff concerning her health condition and/or disability.[2] Each incident occurred in or after August 2003, when Ms. McDaniel first became aware that Plaintiff was disabled, in that she suffered from thoracic outlet syndrome, cervical degenerative

---

described during her sworn deposition testimony.

[2] As with Plaintiff's allegations of race-based comments, Plaintiff's "Affidavit" also contradicts her deposition testimony. Specifically, Plaintiff alleges in her "Affidavit" that Ms. McDaniel suggested to her on three, not two, occasions that she should quit and file for permanent disability. See Pl.'s Resp. Def.'s Mot. Summ. J. 5–6.

joint disease, and myofacial syndrome. Ms. McDaniel was also aware that Plaintiff was trying to become pregnant. At some point after learning these facts in August 2003, Ms. McDaniel allegedly told Plaintiff that, in light of her medical conditions, she was "stupid" for trying to get pregnant, referring to her as "crippled." Id. at 155–56. Ms. McDaniel allegedly told Plaintiff that "she should quit and go on disability." Id. at 192. During the second incident, which occurred in February 2004, Ms. McDaniel allegedly stated to Plaintiff that she was "old and disabled and no good to the company." Id. at 159. Ms. McDaniel added that District Manager Reggie Coleman did not want "old and disabled" employees at the new store. See id. at 176. Plaintiff responded that she was neither old nor disabled, to which Ms. McDaniel replied, "[O]ld and infirm, I should say." Id. Finally, Plaintiff alleges that on one other occasion, Ms. McDaniel stated that Plaintiff "should quit and go out on disability." Id. at 193.

**B.   Facts Relating to Events Leading up to Plaintiff's Termination**

As Plaintiff was aware, BCF company policies required her to maintain good relations with customers, co-employees, assistant managers, and store managers. See id. at 100–01. Upon beginning her new position, Plaintiff was given an employee handbook (the "Employee Handbook") containing one provision, among others, explaining that BCF would conduct a full investigation in the event of a loss or suspected loss of merchandise. See Burlington Coat Factory Employee Handbook § 10.17 (attached to Def.'s Mem. Supp. Mot. Summ. J. as ex. D). The provision required all employees to cooperate fully with any such investigations and stated that a lack of cooperation could result in termination. The Employee Handbook also explained that an employee's dishonesty, use of abusive or vulgar behavior, participation in horseplay, discourteous behavior toward customers, unsatisfactory work performance or conduct, and abandonment of his or her job or failure to report to work without

notifying the immediate supervisor would all be grounds for disciplinary action, including termination. See id. § 12.

Several aspects of Plaintiff's work performance warrant mentioning. On May 4, 2003, for example, Plaintiff was involved in a verbal altercation with a customer after she admonished the customer for not properly supervising his children. As a result of this incident, Plaintiff received a written warning from District Manager Coleman for treating the customer rudely. The warning explained that further misbehavior could result in termination.

In February 2004, Plaintiff received an employee evaluation (the "Employee Evaluation") that noted several areas in which she needed to improve, including: customer service and sales management; setting an example for sales associates to follow; greeting customers with positive energy; merchandise presentation; leadership/communication/teamwork; attitude; professionalism with co-workers; and operational compliance. The Employee Evaluation also noted that Plaintiff's future with BCF was questionable and that termination was possible unless there was significant improvement in the cited areas. See Mgmt. Progress Report and Dev. Form B 000209–10, 13, 15, 21 (attached to Def.'s Mem. Supp. Mot. Summ. J. as ex. F).

In late February and early March 2004, while BCF was in the process of moving from an existing store in Midlothian, Virginia (the "old store") to a new store location (the "new store"), Plaintiff came under investigation for the removal and possible theft of a linens fixture from the old store. Judith Freeman, a district manager from another region, assisted District Manager Coleman with the investigation. Plaintiff first told District Manager Freeman, with District Manager Coleman present, that she paid $20.00 for the linens fixture and that Shoe Department Manager Kelly Colyer rang up the purchase on a sales register. See Decl. Judith Freeman ¶ 8 (attached to Def.'s Mem. Supp. Mot. Summ.

J. as ex. H). A review of the register tape, however, revealed otherwise—specifically, that Plaintiff had purchased two men's shirts and a picture frame, and that Ms. Colyer discounted the picture frame 70% from $16.99 to $5.10. See id. ¶ 9. When confronted with the register tape, Ms. Colyer stated that she processed a $20.00 sale consisting of the linens fixture and two men's shirts. In a second conversation with District Manager Freeman, Ms. Colyer changed her story, stating that she had processed the purchase of the linens fixture, but that she had never actually seen the fixture. See id. ¶¶ 9, 11; Decl. Reggie Coleman ¶¶ 8–9 (attached to Def.'s Mem. Supp. Mot. Summ. J. as ex. G). Finally, when later confronted with the merchandise identification information for the items on the register tape, Ms. Colyer admitted that she processed only a picture frame and two shirts and was not aware that Plaintiff had removed the linens fixture from the store until Plaintiff told her on Monday, March 8, 2004, two days after the transaction. At that time, Plaintiff requested that Ms. Colyer tell anyone who might ask that Plaintiff had, indeed, paid for the linens fixture. Ms. Colyer further explained that Plaintiff indicated that she would pay for the linens fixture later that day, but never did. See Decl. Judith Freeman ¶ 12; Decl. Reggie Coleman ¶ 10; Decl. Kelly Colyer ¶¶ 5–7 (attached to Def.'s Mem. Supp. Mot. Summ. J. as ex. I). As a result of Ms. Colyer's dishonesty, District Manager Coleman terminated her, consistent with BCF guidelines.

While District Manager Coleman was terminating Ms. Colyer on March 8, 2004, District Manager Freeman, along with a store manager from another region, Ruth Bekele, met with Plaintiff. When asked about the class and sku numbers used in the transaction at issue, as well as the markdown of an item from $16.99 to $5.10, Plaintiff stated that Ms. White had supplied that information. When informed that Ms. White denied doing so and that Ms. Colyer was writing a statement at that moment admitting that she had not processed the linens fixture, and that Plaintiff had asked her to lie about the

transaction, Plaintiff offered no explanation. See Decl. Judith Freeman ¶¶ 14–16. Instead, Plaintiff began to cry and cough, all the while contending that her store manager and district manager were trying to force her termination. Ms. Bekele offered Plaintiff water and suggested that she take deep breaths. When District Manager Freeman asked if she had asthma, Plaintiff responded that she was sick, was taking medication, and that she was going to get a lawyer. Ms. Bekele told Plaintiff several times to calm down and wait, but Plaintiff repeated that she was going to get a lawyer, walked out of the meeting, and exited the store. See id. ¶ 16.

Ms. Bekele and District Manager Freeman then updated District Manager Coleman on their meeting with Plaintiff. After hearing what happened, District Manager Coleman terminated Plaintiff for leaving during an investigation. District Manager Coleman advised Plaintiff of her termination when he met her at the new store around mid-day on March 12, 2004, the first time she reported to work since walking out of the investigative meeting. See Decl. Reggie Coleman ¶¶ 13–16. District Manager Coleman later stated that he most likely would have terminated Plaintiff for dishonesty had she not fled from the investigation. Id. ¶ 17.

## II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment can be granted only when "there is no genuine issue as to any material fact" and where "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). Although the facts are construed in this manner, a court must inquire into "the genuineness and materiality of any purported factual issues." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Material facts are those

which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The determination of the genuineness of an issue "calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits." Ross, 759 F.2d at 364. An issue is genuine "when the evidence . . . create[s] fair doubt; wholly speculative assertions will not suffice." Id. A motion for summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

### III.   ARGUMENTS

**A.   BCF's Arguments**

BCF argues that Plaintiff's Title VII hostile work environment claim fails for two reasons. First, BCF contends that the Title VII hostile work environment claim is untimely, because Plaintiff did not file her EEOC Complaint until June 2003, more than three hundred days after the last incident forming the basis for her Title VII hostile work environment allegations. Second, BCF argues that the conduct alleged was not sufficiently severe or pervasive to constitute a cognizable hostile work environment claim under Title VII.

Similarly, BCF argues that Plaintiff cannot prevail on her ADA hostile work environment claim, "because the conduct alleged is not sufficiently severe or pervasive to alter a term, condition, or privilege of employment." Def.'s Mem. Supp. Mot. Summ. J. 15. While conceding that Plaintiff has alleged "two isolated instances of inappropriate, insensitive behavior," BCF opines that this behavior "clearly does not rise to the level of repugnance which is required to sustain a claim for hostile work environment under the ADA." Id. at 16–17.

Finally, with regard to Plaintiff's ADA discriminatory termination claim, BCF argues that Plaintiff cannot make out a prima facie case of discriminatory termination. In particular, BCF states that Plaintiff was not meeting BCF's legitimate performance expectations when she was terminated, and that Plaintiff's termination did not occur under circumstances giving rise to a reasonable inference of unlawful discrimination. Moreover, BCF argues, even if Plaintiff could make out a prima facie case, BCF had at least one legitimate, non-pretextual reason for terminating Plaintiff.

**B.     Plaintiff's Arguments**

Plaintiff does not present any legal arguments in opposition to BCF's Motion for Summary Judgment. As already mentioned, Plaintiff's opposition consists solely of a chronological list of facts related to her claims. Notably, Plaintiff's opposition does not effectively contest any of the relevant factual assertions set forth in BCF's Statement of Undisputed Facts.

## IV.     DISCUSSION

With no arguments to consider from Plaintiff, and viewing no genuine issue of material fact, the Court must assess BCF's arguments and determine whether BCF is rightfully entitled to judgment as a matter of law.

**A.     Title VII Hostile Work Environment Claim**

As BCF suggests, Plaintiff's Title VII hostile work environment claim is untimely under both statutory and case law authority. As explained in 42 U.S.C. § 2000e-5(e)(1), a charge of an unlawful employment practice "shall be filed [with the EEOC] by or on behalf of the person aggrieved within [at most] three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (2000). Federal courts routinely recognize the need to dismiss a plaintiff's complaint for failure to comply with mandatory EEOC charge filing deadlines. See, e.g., Fairchild v. Forma

Scientific, Inc., 147 F.3d 567, 576 (7th Cir. 1998). This Court has interpreted 42 U.S.C. § 2000e-5 to preclude a plaintiff from asserting a Title VII claim in federal court when a charge was not filed with the EEOC within three hundred days of the unlawful employment practice at issue. See, e.g., Stringfield v. Christopher Newport Univ., 64 F. Supp. 2d 593, 595–97 (E.D. Va. 1999). In Stringfield, after concluding that the continuing violation doctrine did not apply, the Court granted the defendants' motion for summary judgment as to the Title VII claims for acts of race discrimination that allegedly occurred more than three hundred days prior to Plaintiff's filing of her charge with the EEOC. Id. at 597.

As made clear in her deposition testimony, Plaintiff's Title VII hostile work environment claim is founded upon Ms. White's use of the term "you people" in conversations with Plaintiff. The last alleged utterance of the phrase at issue was in March 2003. Plaintiff did not file her EEOC Complaint, however, until June 2004, well over three hundred days after the alleged occurrence of the most recent unlawful employment practice underlying her Title VII hostile work environment claim. Understandably, neither party has suggested the applicability of the continuing violation doctrine. As such, viewing Plaintiff's Title VII hostile work environment claim as untimely, the Court will grant BCF's Motion for Summary Judgment with respect to Plaintiff's claim for hostile work environment damages under Title VII.[3]

**B.   ADA Hostile Work Environment Claim**

To substantiate an ADA hostile work environment claim, a plaintiff must demonstrate that: 1) she is a qualified individual with a disability; 2) she was subjected to unwelcome harassment; 3) the

---

[3] Because summary judgment can be properly granted in BCF's favor on the procedural basis of untimeliness, it is not necessary to analyze BCF's substantive arguments on the merits.

harassment was based on her disability; 4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and 5) some factual basis exists to impute liability for the harassment to the employer. Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 (4th Cir. 2004).

Of these five requirements, BCF contests only Plaintiff's ability to satisfy the fourth element for establishing her ADA hostile work environment claim. The thrust of BCF's opposition to Plaintiff's claim is that by merely alleging "two isolated instances of inappropriate, insensitive behavior and once incident of compassion," Plaintiff has not demonstrated that the behavior she endured was sufficiently severe or pervasive so as to constitute an objectively hostile work environment under the ADA. Def.'s Mem. Supp. Mot. Summ. J. 16. Although BCF does not expressly concede that Plaintiff can prove the remaining elements, BCF's Motion for Summary Judgment as to the ADA hostile work environment claim essentially hinges on the "severe and pervasive" element.

To satisfy the "severe and pervasive" element, a plaintiff must show that the work environment in question was both subjectively and objectively hostile. See Fox v. Gen. Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001). In determining objective hostility, a court must consider several factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. See id. at 179. Fellow employees' mere insensitivity to a plaintiff's disability does not rise to the level necessary for a cognizable hostile work environment claim under the ADA. See id. Courts do not view the ADA as a "'general civility code'" that can anchor a plaintiff's claim based on co-workers' infrequent utterances of off-color, moderately offensive remarks. Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 726 (8th Cir. 1999) (finding Plaintiff's allegations of two incidents that

"could even colorably be connected" to Plaintiff's disability to be legally insufficient for an ADA hostile work environment claim) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Rather, the behavior or remarks in question must be regular, see Fox, 247 F.3d at 179, and deeply repugnant—not merely unpleasant. See Edmonson v. Potter, 118 F. App'x 726, 730 (4th Cir. 2004) (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996)).

Turning to the facts presently before the Court, Ms. McDaniel allegedly made all three of the comments forming the basis for Plaintiff's ADA hostile work environment claim. Plaintiff alleges that: 1) Ms. McDaniel called Plaintiff "crippled," stated to her that she was "stupid" for "trying to have a baby," and suggested that she "quit and go on disability" in August 2003; 2) Ms. McDaniel told Plaintiff that she was "old and disabled and no good to the company," and also that she was "old and infirm" in February 2004; and 3) Ms. McDaniel stated to Plaintiff on another occasion that she "should go out on disability."

Plaintiff's allegations are not legally sufficient to fall within the scope of the ADA for an objectively hostile work environment claim. Three alleged instances of disability-based comments contributing to a hostile work environment over the span of 2.5 years of employment do not amount to the kind of pervasive harassment that would alter a term, condition, or privilege of employment. The instant facts do not come close to the level of frequency necessary to support a cause of action for a hostile work environment under the ADA. Moreover, the comments, while inappropriate and offensive, were not physically threatening, nor were they sufficiently severe to constitute the type of deeply repugnant, humiliating treatment proscribed by the ADA. Two of the three comments appear to have been motivated, at least in part, by Ms. McDaniel's concern for Plaintiff's well-being. Finally, Plaintiff has not presented any evidence suggesting that the comments unreasonably interfered with her work

performance. Because the alleged harassment was not sufficiently severe or pervasive, the Court will grant summary judgment in BCF's favor as to Plaintiff's ADA hostile work environment claim.

**C.     ADA Discriminatory Termination Claim**

To prevail on an ADA discriminatory termination claim, a plaintiff must establish three elements: 1) she was a qualified individual with a disability; 2) she was discharged; 3) at the time of her discharge, her job performance was meeting her employer's legitimate expectations; and 4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001). If a plaintiff is able to make out a prima facie case, the defendant then bears the burden of providing a legitimate, non-discriminatory reason for discharging the plaintiff. See Ennis v. Nat'l Assoc. of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). Importantly, if the defendant can articulate such a reason, the burden is once again placed on the plaintiff to demonstrate that the defendant's proffered reason is merely pretext. See Parker v. Geneva Enters., Inc., 997 F. Supp. 706, 709 (E.D. Va. 1997).

Even if the Court assumes that Plaintiff has established a prima facie case of discriminatory termination under the ADA, BCF has articulated more than one legitimate, non-pretextual reason for terminating Plaintiff's employment. The record makes clear that Plaintiff was failing in her employment duties and violated several company policies. In May 2003, Plaintiff received a stern written warning after her "rude and nasty" behavior toward a customer. Plaintiff was advised at that time that further misconduct could lead to her termination. In February 2004, just a month before her termination, Plaintiff received and refused to sign a performance evaluation listing many areas in which she needed to improve. At that time, she was again informed that failure to improve could result in her termination. Additionally, another BCF employee revealed to BCF management that Plaintiff had asked

13

her to lie about Plaintiff's removal of a linens fixture from the store without paying. Dishonesty was prohibited conduct under BCF guidelines. Moreover, immediately before her termination, Plaintiff walked out of a meeting with BCF managers who were investigating Plaintiff's involvement in what they believed to be theft of store merchandise. Failure to cooperate with BCF management during a corporate investigation was yet another known basis for termination.

In short, Plaintiff cannot surmount the abundance of non-pretextual justification BCF had in terminating her employment. Plaintiff has not even attempted to characterize BCF's proffered reasons as pretextual. Accordingly, the Court will grant summary judgment in BCF's favor as to Plaintiff's ADA wrongful discrimination claim.

## V. CONCLUSION

For the reasons stated, BCF's Motion for Summary Judgment is hereby GRANTED in its entirety.

An appropriate Order shall issue.

                                                /s/
                                      James R. Spencer
                                      CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   7th   day of July 2006